## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

### CASE NO. 4:21-cv-232-AW-MAF

CONNIE BATCHELOR, SHAQUILA
BUMPASS, JENNIFER CASTRO, and
QRUINTRELL COOK,

       Plaintiffs,

v.

PAUL ROLSTON, individually, and
THE NAKAMOTO GROUP INC.,

       Defendants.

_____/

### DEFENDANT THE NAKAMOTO GROUP'S
### MOTION TO DISMISS WITH PREJUDICE

      DEFENDANT, THE NAKAMOTO GROUP INC., by undersigned counsel, hereby files this Motion to Dismiss with Prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  In support of this Motion to Dismiss, DEFENDANT states as follows:

### I.  INTRODUCTION

      PLAINTIFFS are Federal prisoners jailed at a prison in Tallahassee, Florida.  THE NAKAMOTO GROUP INC. ("NAKAMOTO") is an independent contractor that was contracted by the Federal Bureau of Prisons ("BOP") to conduct an audit, as required by the Prison Rape Elimination Act ("PREA").  Allegedly, a physician assistant, CO-DEFENDANT PAUL ROLSTON, sexually assaulted PLAINTIFFS.  But, PLAINTIFFS are attempting to hold NAKAMOTO liable for the conduct of ROLSTON.

      As set forth in detail below, all of PLAINTIFFS' theories of liability for trying to hold NAKAMOTO liable for such conduct fail as a matter of law.  Indeed, there is no indication that

PLAINTIFFS even exhausted their administrative remedies before filing this lawsuit.  Further, prisoners like PLAINTIFFS have no legal rights and thus cannot bring a private cause of action under the PREA – PLAINTIFFS' claims against NAKAMOTO are really just PREA claims in disguise.  Finally, PLAINTIFFS have no rights as third-party beneficiaries under the contract between NAKAMOTO and the BOP.  Finally, NAKAMOTO owed PLAINTIFFS no legal duties under tort law; had no "special relationship" with PLAINTIFFS to give rise to tort liability; and, had no control over the prison, the prison employees/guards, CO-DEFENDANT ROLSTON, or the prisoners such that NAKAMOTO could be liable in tort.

Consequently, for the numerous reasons stated below, this matter should be dismissed with prejudice.

## II.  ALLEGATIONS OF COMPLAINT

PLAINTIFFS are all federal prisoners at FCI Tallahassee.  **Complaint ¶¶6, 9**. DEFENDANT THE NAKAMOTO GROUP INC. ("NAKAMOTO") is an independent contractor that contracted with the Federal Bureau of Prisons ("BOP") to provide Prison Rape Elimination Act ("PREA") audit services for various BOP facilities.  **Complaint ¶8; Contract attached as Exhibit 1.[1]** DEFENDANT PAUL ROLSTON was a Physicians' Assistant at FCI

---

[1]  It is generally true that the "scope of the review must be limited to the four corners of the complaint." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).  If matters outside the pleadings are presented by the parties and considered by the district court, the Rule 12(b)(6) motion must be converted into a Rule 56 summary judgment motion. Fed.R.Civ.P. 12(d).  There is, however, an important qualification to this rule where **certain documents and their contents are undisputed:** "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, Ltd. v. Banc of Am. Secs., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); see also Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir.1999) (stating that "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute"); Speaker v. U.S. Dep't of Health and Human Services, 623 F.3d 1371, 1379 (11th Cir. 2010).  **Here**, NAKAMOTO asserts that the contract between it and the BOP is central to PLAINTIFFS' claim because PLAINTIFFS

Tallahassee.  Allegedly, all PLAINTIFFS were sexually assaulted by ROLSTON. **Complaint ¶¶10-12; 16-35 (Batchelor); 36-49 (Bumpass); 50-62 (Castro); and, 63-78 (Cook).**

Based on the sexual assault allegations, PLAINTIFFS brought the following claims: Count I: against ROLSTON for Cruel and Unusual Punishment in violation of the Eighth Amended of the U.S. Constitution, **Complaint ¶¶79-85**; Count II: Negligence against NAKAMOTO, **Complaint ¶¶86-99**; and, Count III: Breach of Contract against NAKAMOTO regarding the contract between the BOP and NAKAMOTO, with PLAINTIFFS as alleged third-party beneficiaries under such contract, **Complaint ¶¶100-111.**

## III.  LEGAL STANDARD – MOTION TO DISMISS

In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To meet this "plausibility" standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

---

allege that they are third-party beneficiaries of such contract; and, this is the operative contract so the authenticity should not be challenged.

# IV.  ARGUMENT AND ANALYSIS OF LAW

Based on the numerous independent arguments set forth below, NAKAMOTO asserts that PLAINTIFFS' Complaint must be dismissed as a matter of law because: (A) PLAINTIFFS ailed to allege that they exhausted all administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"); (B) as prisoners, PLAINTIFFS have no private rights or private causes of action under the Prison Rape Elimination Act ("PREA"); (C) PLAINTIFFS were not intended third-party beneficiaries under the contract between the BOP and NAKAMOTO; (D) PLAINTIFFS' negligence claim is deficient for a host of reasons set forth below; (E) also, PLAINTIFFS' negligence claim fails because the alleged duties owed arose under a contract and did not arise independent of such contract; and, (F) finally, PLAINTIFFS' negligence claim fails because NAKAMOTO had no duty to protect PLAINTIFFS from the criminal acts of third parties.

**A.  The Case Against NAKAMOTO Must be Dismissed as a Matter of Law for Lack of Jurisdiction because PLAINTIFFS Fail to Allege that they Exhausted the Required Administrative Remedies Pursuant to the Prison Litigation Reform Act.**

Pursuant to the Prison Litigation Reform Act ("PLRA"):

No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), **or any other Federal law**, by a prisoner confined in any jail, prison, or other correctional facility **until such administrative remedies as are available are exhausted.**

42 U.S.C. § 1997e(a).[2]   Indeed, "Congress now has mandated exhaustion in section 1997e(a) and there is no longer discretion to waive the exhaustion requirement." Alexander v. Hawk, 159

---

[2]   As discussed below, although PLAINTIFFS label their theories of liability against NAKAMOTO as negligence and breach of contract, i.e., state law theories, the theories appear to be claims under the Prison Rape Elimination Act ("PREA") and/or completely premised on the PREA, i.e., Federal law.  Additionally, as also discussed below, it appears the breach of contract claim is to be analyzed under Federal common law principles.  Accordingly, NAKAMOTO asserts that this Complaint is premised on Federal law.

F.3d 1321, 1325 (11th Cir. 1998); see also Booth v. Churner, 532 U.S. 731, 741 (2001) (finding

that Congress has mandated exhaustion of administrative remedies, regardless of the relief

offered through the administrative procedures).  Moreover, Section 1997e(a) applies to federal

criminal prisoners in any prison, regardless of whether it is a federal prison or a privately

operated facility. PRI-HAR v. Corrections Corp. of American Inc., 154 Fed. Appx. 886, 888

(11th Cir. 2005).

In determining whether a plaintiff has exhausted his administrative remedies, a court does

"not review the effectiveness of those remedies, but rather whether remedies were available and

exhausted." Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) (citing  Alexander v. Hawk,

159 F.3d 1321, 1326 (11th Cir. 1998)).

Generally speaking, the BOP:

> makes available to its inmates a **three level formal administrative remedy
> process** if informal resolution procedures fail to achieve sufficient results. The
> administrative remedy process is begun by filing a Request for Administrative
> Remedy at the institution where the inmate is incarcerated. If the inmate's
> complaint is denied at the institutional level, he may appeal by filing a Regional
> Administrative Remedy Appeal with the Regional Office for the geographic
> region in which the inmate's institution of confinement is located. * * * * Finally,
> if the Regional Office denies relief, the inmate can appeal that decision to the
> Office of General Counsel via a Central Office Administrative Remedy Appeal.

Wade v. United States, 2008 WL 11442058 *2 (M.D. Fla. Feb. 19, 2008), aff'd 311 Fed. Appx.

245 (11th Cir. 2009); see 28 C.F.R. § 542.10 ("The purpose of the Administrative Remedy

Program is to allow an inmate to seek formal review of an issue relating to **any aspect** of his/her

confinement"); 28 C.F.R. § 542.11 ("Inmates have the responsibility to use this Program in good

faith . . . .").

Finally, there is no doubt that a prisoner's complaint under the PREA is subject to the

PLRA's administrative process/exhaustion requirement:

[The] PREA generally left intact the PLRA's exhaustion requirement . . . .

DOES 8-10 v. Snyder, 945 F.3d 951, 956 (6th Cir. 2019);

> Thus, the court held that Plaintiff's **PREA complaint** did not satisfy § 1997e(a) [i.e., the PLRA's exhaustion requirement], and his case was dismissed without prejudice to refile after he **properly exhausted his administrative remedies**.

Barringer v. FNU Stanley, 2017 WL 1028595 *3 (W.D.N.C. Mar. 16, 2017) (citing Barringer v.

Brown, No. 5:15-ct-03042-FL, 2016 U.S. Dist. LEXIS 14938 (E.D.N.C. Oct. 18, 2016));

> As Plaintiff did not fully exhaust her administrative remedies for either her staff grievances or her **PREA complaint**, her suit is barred under 42 U.S.C. § 1997e(a) [of the PLRA].

Naisha v. Metzger, 490 F.Supp.3d 796, 803 (D. Del. Sept. 30, 2020) (currently on appeal).

Accordingly, here, PLAINTIFFS fail to allege that they exhausted their administrative remedies regarding their complaints pursuant to the PREA against NAKAMOTO; thus, this Court lacks jurisdiction to hear this matter and the Complaint must be dismissed for lack of jurisdiction.

**B.    The Claims for Negligence and Breach of Contract Against NAKAMOTO must be Dismissed as a Matter of Law because there is No Private Right of Action under the PREA and these Claims are Really PREA Claims in Disguise.**

As mentioned above, PLAINTIFFS bring a negligence and breach of contract (as an alleged intended third-party beneficiary, discussed below) claim against NAKAMOTO. But, as noted in Footnote 2, these alleged theories of liability are really PREA claims in disguise.

Indeed, as alleged in the Complaint, both the negligence and breach of contract claims are based and premised entirely on alleged violations of the PREA:

> Paragraph 87 (negligence):    Plaintiffs are entitled to relief against NAKAMOTO in conducting PREA audits;

> Paragraph 110 (breach of contract):  NAKAMOTO breached the contract by failing to conduct appropriate and meaningful PREA audits . . . .

However, as clearly stated in the Presidential Memorandum Implementing the PREA, dated May 17, 2012, and located at 34 USC §30301, in pertinent part:

> This memorandum is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies or entities, its officer, employees, or agents, **or any other person**.

accord, Colon v. Kenwall, 2018 WL 5809863 *5 (M.D. Pa. Nov. 6, 2018) ("[I]t is well settled that, 'the Prison Rape Elimination Act . . . **does not give rise to a private cause of action**.'* * * Therefore, any claims made by Colon **premised upon** the existence of a private right of action derived from the [PREA] fail as a matter of law and will be dismissed.") (citing numerous cases); Peralta v. Swetalla, 2018 WL 6334723 *5 (E.D. Cal. Dec. 5, 2018) ("**The PREA does not, however, create a private right of action**. [citations omitted]. Rather, the PREA was enacted to study the problem of prison rape." [citation omitted].), report and recommendation adopted by 2019 WL 1517722 (E.D. Cal. Apr. 8, 2019); Abshire III v. Corrections Corp. of America, 2015 WL 10579295 *4 (W.D. La. Dec. 21, 2015) ("Rather, [the PREA] was intended to address the problem of rape in prison, authorize grant money, and create a commission to study the issue; **it does not give prisoners any specific rights**."), report and recommendation adopted by 2016 WL 1354988 (W.D. La. Apr. 1, 2016).

Again, here, there is no doubt that the negligence and breach of contract  (as an alleged intended third-party beneficiary) claims against NAKAMOTO are premised entirely upon alleged violations of the PREA; thus, the negligence and breach of contract claims are really PREA claims in disguise.   But, **the PREA provides no legal rights to the prisoners**. Accordingly, the PLAINTIFFS' claims against NAKAMOTO must be dismissed for this reason also.

C.   **PLAINTIFFS are Not Third-Party Beneficiaries under the Contract between the BOP and NAKAMOTO, Particularly since PLAINTIFFS have No Legal Rights under the PREA.**

In Count III, PLAINTIFFS assert a breach of contract claim against NAKAMOTO even though PLAINTIFFS were not parties to the contract.  The contract is attached as **Exhibit 1 –** see Footnote 1 regarding considering the contract on a Motion to Dismiss[3] – and is between NAKAMOTO and the BOP.  Accordingly, PLAINTIFFS seek to recover under the contract pursuant to a third-party beneficiary theory; thus, PLAINTIFFS claim that the "purpose" of the contract was to benefit prisoners like PLAINTIFFS.

1.   **Federal Common Law or Florida Law?**

When a contract involves the Federal Government, such as the BOP, generally Federal common law applies. See e.g. United States v. MCCI Group Holdings LLC, 2013 WL 3991964 *3 (S.D. Fla. Aug. 2. 2013) ("Thus, federal common law will frequently apply to the interpretation of contracts in cases involving obligations of the federal government, obligations and rights of private parties created by federal law . . . .") (citation omitted); Begner v. United States 428 F.3d 998, 1004 (11th Cir. 2005) ("Federal courts use federal common law to evaluate government contracts."); United States Postal Serv. V. Post Office Assoc. LLLP, 2011 WL 1792704 *4 (M.D. Fla. Apr. 22, 2011) ("Interpretation of the Postal Lease and Amendment here is governed by federal law.") (citations omitted), report and recommendation adopted by 2011 WL 1806598 (M.D. Fla. May 11, 2011); S.B. v. Wilson, 2021 WL 4494195 *5 (S.D. West Va.

---

[3]   Whether a party has standing to sue under a contract is considered a jurisdictional issue, i.e., subject matter jurisdiction. Interface Kanner LLC v. JP Morgan Chase Bank, N.A., 704 F.3d 927, 931 (11th Cir. 2013), cert. denied 571 U.S. 941 (2013).  When subject matter jurisdiction is at issue, generally, a court can consider matters outside the pleadings, such as the attached contract. See Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

Sept. 30, 2021) ("Federal common law governs civil liabilities arising out of a private contractor's performance of federal procurement contracts.").[4]

However, because this analysis concerns basic and fundamental contract principles, it is unlikely that there are any substantive differences between third-party beneficiary status when analyzed under Federal common law as opposed to Florida common law; thus, the end result is likely the same.  Furthermore, Federal courts will consider state law even though the analysis is technically controlled by Federal common law. See e.g. Begner v. United States 428 F.3d 998, 1004-05 (11th Cir. 2005) ("When determining what particular doctrine to apply in a particular suit, however, the court will often select a rule of state law."); United States v. MCCI Group Holdings LLC, 2013 WL 3991964 *4 (S.D. Fla. Aug. 2. 2013) ("Nevertheless, because the contract interpretation principles applied under Florida law and federal law are virtually the same, the outcome of the case will be unaffected by the choice of law."); Defenders of Wildlife v. Salazar, 877 F.Supp.2d 1271, 1290 (M.D. Fla. July 10, 2012) ("As discussed below, the Court discerns no material differences between Florida law and federal common law in this case.").

### 2.    PLAINTIFFS are Not "Intended" Third-Party Beneficiaries

Initially, "[t]hird-party beneficiary status is exceptional in the law and 'should not be granted liberally,' [citation omitted], and courts must take a stringent approach to recognizing such exceptional status . . . ." [citation omitted]. S.B. v. Wilson, 2021 WL 4494195 *5 (S.D. W.Va. Sept. 30, 2021).  "Moreover, third-party beneficiary status is particularly difficult to prove in connection with a federal government contract." Id.  "[T]hird parties to government contracts 'are generally assumed to be **incidental** beneficiaries.'" Interface Kanner LLC v. JP Morgan

---

[4] For a virtually identical case involving NAKAMOTO, see the case of S.B. v. Wilson, 2021 WL 4494195 (S.D. West Va. Sept. 30, 2021).

Chase Bank, N.A., 704 F.3d 927, 933 (11th Cir. 2013) (citation omitted), cert. denied 571 U.S. 941 (2013).

"To qualify as a third-party beneficiary under federal common law, a plaintiff must show that 'the contract reflects the express or implied intention of the parties to benefit the third party.'" S.B. v. Wilson, 2021 WL 4494195 *5 (S.D. W.Va. Sept. 30, 2021) (citation omitted). "The intent of the parties to the contract is therefore the cornerstone of a claim for third-party beneficiary status." Id. (citation omitted).  "As a result, courts must examine the 'precise language of the contract for a **clear intent to rebut the presumption** that the [third parties] are merely **incidental** beneficiaries' who lack standing to sue for breach of contract." Id. (citations omitted) (emphasis added); accord Interface Kanner LLC v. JP Morgan Chase Bank, N.A., 704 F.3d 927, 933 (11th Cir. 2013) ("To overcome this presumption, [the plaintiff] must show that the parties **'clearly intended'** that **[the plaintiff] be permitted to sue to enforce" the contract at issue**.) (citation omitted) (emphasis added), cert. denied 571 U.S. 941 (2013). "The moving party can accomplish this by showing that 'the [government] contracting officer [was] put on notice, by either the contract language or the attendant circumstances, of the relationship between prime contractor and the third-party . . . so that an intent to benefit the third party is fairly attributable to the contracting officer.'" S.B. v. Wilson, 2021 WL 4494195 *5 (S.D. W.Va. Sept. 30, 2021) (citation omitted). "This is true even when the putative third-party beneficiary is seeking to recover from the private contractor and not the government." Id.

Importantly, "[i]n analyzing whether a litigant possesses rights to enforce a contract as a third-party beneficiary, in addition to probing the intent of the contractor and the U.S. government as evidenced by contractual language, courts also look to whether granting third-

party beneficiary status would **frustrate the intent behind an underlying federal statutory scheme**." Id. (emphasis added).

Here, a review of the contract attached as **Exhibit 1** demonstrates no "clear intent" whatsoever that prisoners like PLAINTIFFS were to be "intended" as opposed to "incidental" beneficiaries under the contract between NAKAMOTO and the BOP.  Indeed, most of the contract is standard, boiler-plate Federal contractual provisions.  Furthermore, there is no provision which even remotely could be construed as permitting prisoners like PLAINTIFFS the ability to sue under the contract to enforce the terms of such contract. Interface Kanner LLC v. JP Morgan Chase Bank, N.A., 704 F.3d 927, 933 (11th Cir. 2013) ("[The plaintiff] must show that the parties **'clearly intended'** that **[the plaintiff] be permitted to sue to enforce" the contract at issue**.) (citation omitted) (emphasis added), cert. denied 571 U.S. 941 (2013).

In fact, as discussed above, the intent underlying the PREA is that prisoners like PLAINTIFFS have no legal rights under the PREA or a private cause of action under the PREA. Thus, allowing PLAINTIFFS to use a contract between a private independent contractor such as NAKAMOTO and the BOP as an end-around to sue under the PREA would completely frustrate the intent of the PREA that prisoners were not granted any specific legal rights or a private cause of action under the PREA. S.B. v. Wilson, 2021 WL 4494195 *5 (S.D. W.Va. Sept. 30, 2021) (citation omitted) ("courts also look to whether granting third-party beneficiary status would **frustrate the intent behind an underlying federal statutory scheme**") (emphasis added).

Accordingly, PLAINTIFFS' third-party beneficiary breach of contract claim fails as a matter of law against NAKAMOTO. See  S.B. v. Wilson, 2021 WL 4494195 *6 (S.D. W.Va. Sept. 30, 2021) ("Given the difficulty in proving third-party beneficiary status in connection with

federal government contracts, [citation omitted], **the court is doubtful that plaintiff will ultimately prevail on her claim [against NAKAMOTO].**") (emphasis added).

**D.    PLAINTIFFS' Negligence Claim Must be Dismissed as a Matter of Law because such Claim is Nothing More than the Breach of Contract Claim in Disguise; and, Under Florida Law, if a Contract Controls, PLAINTIFFS cannot bring Tort Claims in an Attempt to Evade the Contract.**

In Count II, allegedly for negligence against NAKAMOTO, PLAINTIFFS are in reality claiming once again that NAKAMOTO allegedly breached its contract with the BOP and that PLAINTIFFS have a right to sue for such alleged breaches.  However, the negligence claim is nothing more than the breach of contract claim in disguise.  Indeed, by reviewing the allegations under Counts II and III, one can easily conclude that both counts are complaining of the same thing – i.e., NAKAMOTO'S alleged failure to conduct proper PREA audits:

> Paragraph 87 (negligence):    Plaintiffs are entitled to relief against NAKAMOTO in conducting PREA audits;
>
> Paragraph 110 (breach of contract):    NAKAMOTO breached the contract by failing to conduct appropriate and meaningful PREA audits . . . .

Florida law, however, does not permit a tort claim, such as negligence, when the plaintiff is really complaining about an alleged breach of contract:

> Puig's breach of contract claim is premised entirely on Puig's **contractual entitlement** to commissions on resold Bath Club units.  Peebles alleged misrepresentations, luring Puig into performing under her contract certainly explain – and plainly prove – PADC'S breach of contract with Puig.  In our view, however, Peeble's inducement to Puig to perform her existing contract is **not separate and distinct** from the contract breach itself as to give rise to an independent fraud claim against Peebles.  **When, as here, a contract has been breached, a tort action lies only for acts independent of those acts establishing the contract's breach. [citation omitted].**  As reprehensible as the jury may have found Peeble's actions to be, **those actions neither converted Puig's claim for contract damages into a claim for tort damages**, nor imposed on Peebles personal liability for PADC's contractual obligations.

There is nothing in the record indicating **that Puig suffered any distinct damages separate and apart from the damages she suffered as a result of PADC's failure to honor its contract with Puig.**   Therefore, any dispute regarding the applicability of the contract's commission provision to resales existed irrespective of anything Peebles might have said to Puig.  The parties' contractual obligations – and whether Puig was entitled to commissions for resale units – were based on the language of the employment contract between Puig and PADC, to which Peebles was not a party.

***

**Florida does not allow a party damaged by a breach of contract to recover the exact same contract damages via a fraud claim**. [citation omitted].

Peebles v. Puig, 223 So.3d 1065, 1068-1069 (Fla. 3rd DCA 2017), rev. denied, 2018 WL 272805 (Fla. Jan. 2, 2018).[5]

That is exactly what PLAINTIFFS are trying to allege here against NAKAMOTO – that is, they are trying to allege the breach of a duty in tort regarding issues that are controlled by a contractual relationship.  The modern case law preventing such pleading is based on Justice Pariente's concurring opinion in Tiara Condo Ass'n:

when the parties have negotiated remedies for nonperformance pursuant to a contract, **one party may not seek to obtain a better bargain than it made by turning a breach of contract into a tort for economic loss**.

Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc., 110 So. 3d 399, 409 (Fla. 2013); See also Monsoon, Inc. v. Bizjet Int'l Sales & Support, Inc., 2017 WL 747555, at *8–9 (S.D. Fla. Feb. 27, 2017) (barring a tort claim because the complaint did not show any

---

[5]   Notice that PLAINTIFFS' Complaint contains only one Prayer for Relief that apparently applies to all Counts.  Thus, PLAINTIFFS are seeking the **exact same damages** for negligence against NAKAMOTO that they seek in breach of contract against NAKAMOTO.  This is prohibited by Florida law:

Florida does not allow a party damaged by a breach of contract to recover the exact same contract damages via a fraud claim. [citation omitted].

Peebles v. Puig, 223 So.3d 1065, 1068-1069 (Fla. 3Rd DCA 2017), rev. denied, 2018 WL 272805 (Fla. Jan. 2, 2018).

independent duties not imposed by the contract); <u>Island Travel & Tours, Ltd. v. MYR Indep., Inc.</u>, 300 So.3d 1236, 1239 (Fla. 3rd DCA 2020) (reiterating the <u>Peebles</u> holding, stating "It is a fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract."); <u>see also</u> <u>Certain Underwriters at Lloyd's of London, UK Subscribing to Policy No. B1230AP56189A14 v. Ocean Walk Resort Condo. Ass'n, Inc.</u>,  2017 WL 3034069 *10 (M.D. Fla. July 18, 2017) (stating that "in order to bring a valid tort claim, a party must still demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim."); <u>Callaway Marine Techs., Inc. v. Tetra Tech, Inc.</u>, 2016 WL 7407769 *3–4 (S.D. Fla. Dec. 22, 2016) (holding that the plaintiff "failed to allege conduct that is independent of a breach of contract amounting to an independent tort. Each of the allegedly fraudulent statements advanced by [defendant] touches on subject matters that were later reduced to writing in the Subcontract"); <u>Lookout Mountain Wild Animal Park, Inc. v. Stearns Zoological Rescue & Rehab Ctr., Inc.</u>, 553 Fed. Appx. 864, 866 (11th Cir. 2014) (noting that "we are also not persuaded that plaintiff has identified any tortious acts that are sufficiently independent of the alleged breach of contract to render the tort claims viable").

Accordingly, PLAINTIFFS' negligence claim must be dismissed because PLAINTIFFS are simply trying to replead the alleged breach of contract claim as a tort claim.[6] <u>See</u>  <u>S.B. v. Wilson</u>, 2021 WL 4494195 *6-7 (S.D. W.Va. Sept. 30, 2021).

---

[6]    This doctrine is also known as the "gist of the action" doctrine. <u>S.B. v. Wilson</u>, 2021 WL 4494195 *6-7 (S.D. W.Va. Sept. 30, 2021).

**E.     Similar to the Argument Immediately Above, PLAINTIFFS' Negligence Claim Must be Dismissed as a Matter of Law because NAKAMOTO Owed No Duty to PLAINTIFFS Under Tort Law; Rather, the Duties NAKAMOTO Owed (to the BOP) Arose Purely Under Contract Law; Thus, the Alleging of a Tort is Prohibited.**

Similarly, and arguably a subset of the argument above, PLAINTIFFS' negligence claim also fails because PLAINTIFFS cannot show that NAKAMOTO owed them any duties, particularly duties that are **independent** of duties owed by contract – although, as analyzed above, NAKAMOTO owed PLAINTIFFS no duties under the contract because PLAINTIFFS were not intended third-party beneficiaries.

**1.     The Court Determines if a Duty was Owed**

Initially, the existence of a duty under negligence law is a question of law for the Court to determine. Virgilio v. Ryland Group Inc., 680 F.3d 1329, 1339 (11th Cir. 2012); Knight v. Merhige, 133 So.3d 1140, 1144 (Fla. 4th DCA 2014), review dismissed 143 So.3d 919 (Fla. 2014).

**2.     There is No Tort Duty to Perform "Appropriate" Audits**

Of course, it goes without saying that no one owes anyone a duty under tort law to perform "appropriate" audits pursuant to the PREA.  Rather, such a duty can arise purely via a contractual relationship, i.e., the relationship between NAKAMOTO and the BOP is purely contractual. Thus, "there is either a breach of that contract or not." See e.g. Silver v. Countrywide Home Loans Inc., 760 F.Supp.2d 1330, 1339 (S.D. Fla. 2011), aff'd 483 Appx. 568 (11th Cir. 2012); S.B. v. Wilson, 2021 WL 4494195 *6 (S.D. W.Va. Sept. 30, 2021) ("[P]laintiff conveniently ignores the fact that, **but for the contract**, NAKAMOTO had no duty to comply with PREA audit standards.  In other words, NAKAMOTO'S alleged duties under the federal regulations arise **because of the contract and not independent of it**.").

In other words, conceptually, this matter is similar to the <u>Silver</u> case cited above.  In <u>Silver</u>, the plaintiff alleged that she was the victim of a predatory lending scheme and that she was fraudulently induced into signing loan documents.  <u>Id</u>. at 1333.  Here, PLAINTIFFS claim they were essentially the victims of alleged poor auditing work.   Among other claims, the plaintiff in <u>Silver</u> brought a negligence action against Countrywide Home Loans ("CHL"), alleging that CHL had a duty to employ competent mortgage servicing and mortgage brokering techniques.  <u>Id</u>. at 1339.  The Court disagreed, however, and concluded that the plaintiff "has not identified any duty, **apart from contractual duties that [CHL] owed her**."  <u>Id</u>.  The Court further elaborated:

> First, there is no tort duty to process loans competently.  **The relationship is contractual; there is either a breach of that contract or not.**
>
> * * *
>
> Here, the parties' relationship was **contractual**, **which precludes a claim for negligence under the contract.**  As [plaintiff] fails to establish that [CHL] owed any duty not arising under contract, [CHL] is entitled to judgment as a matter of law on the negligence claim.

<u>Id</u>. and 1339-40 (emphasis added).

Again, here, conceptually, the scenario is very similar (except for the fundamental fact that PLAINTIFFS are not even parties to the contract and were not intended third-party beneficiaries, which places PLAINTIFFS in an even deeper hole).   The BOP and NAKAMOTO'S relationship is contractual.  There is no tort duty owed by anyone to perform PREA audits; rather, **the relationship is purely contractual** – thus, "there is either a breach of that contract or not."   Accordingly, NAKAMOTO asserts that no tort/negligence claim can be brought against it (by anyone) since the alleged duties at issue arise purely because of the contractual relationship with the BOP.  <u>Silver</u>, at 1340 ("Here, the parties' relationship was

16

contractual, which precludes a claim for negligence under the contract.  As [plaintiff] fails to

establish that [CHL] owed any duty not arising under contract, [CHL] is entitled to judgment as a

matter of law on the negligence claim.").

**F.      NAKAMOTO had No Legal Duty to Protect PLAINTIFFS from the Criminal
Conduct of Third Parties.**

It is unclear whether PLAINTIFFS are claiming that NAKAMOTO had a legal duty to

protect PLAINTIFFS from the criminal acts of third parties.  Because PLAINTIFFS' negligence

claim appears to be premised solely upon NAKAMOTO'S alleged deficient auditing services

pursuant to the PREA, NAKAMOTO will briefly address this issue.[7]

**1.      General Rules of Law**

First, in Florida, "the general rule [is] that there is no duty to protect against the criminal

conduct of third parties, unless the criminal acts are reasonably foreseeable." Dolan Title &

Guaranty Corp. v. Hartford Accident & Indemn. Co., 395 So.2d 296, 299 (Fla. 5th DCA 1981);

accord T.W. and K.W. v. Regal Trace Ltd., 908 So.2d 499, 503 (Fla. 4th DCA 2005) ("However,

a person or entity generally has no duty to take precautions to protect against criminal acts of

third parties."); Knight v. Merhige, 133 So.3d 1140, 1145 (Fla. 4th DCA 2014) ("Generally, there

is **no duty to control** the conduct of a third person to prevent that person from causing physical

harm to another.") (citations omitted), review dismissed 143 So.3d 919 (Fla. 2014).

Merely because the criminal act is possible, does not make such act probable. Dolan, at

299. ("We hold that John Arena's misappropriation of funds was not reasonably foreseeable; that

---

[7]      Additionally, it does not appear that PLAINTIFFS are trying to advance this theory of liability because their Complaint does not use the language commonly used when analyzing such a theory.  As will be discussed via the case law, such language includes whether the criminal conduct was "reasonably foreseeable;" whether a "special relationship" existed between PLAINTIFFS and NAKAMOTO; whether NAKAMOTO had "control" over people, places, or other things necessary to commit the crime; and, whether NAKAMOTO had knowledge of "prior similar criminal conduct."

his acts were merely possible and not probable."); accord Baez v. Wal-Mart Stores East LP, 2012 WL 13005546 *2 (S.D. Fla. May 14, 2012) ("A mere possibility of such causation is not enough.").  Importantly, to impose liability upon a defendant for the criminal acts of another, the defendant must have had the ability "to **control** some aspect of the criminal act." Knight v. Merhige, 133 So.3d 1140, 1144 (Fla. 4th DCA 2014), review dismissed 143 So.3d 919 (Fla. 2014).

### 2.      The "Special Relationship" Exception – No Such Relationship Here

There are limited exceptions to the above general rules.  "A defendant's liability for the criminal acts of third parties is often linked to a 'special relationship' with the plaintiff." Knight v. Merhige, 133 So.3d 1140, 1145 (Fla. 4th DCA 2014) (citations omitted), review dismissed 143 So.3d 919 (Fla. 2014).  The "special relationships" are "protective by nature, requiring the defendant to guard his charge against harm from others." Id.  Recognized "special relationships" under Florida law include: a common carrier-passenger relationship; landlord-tenant relationship; rental care company-customer relationship; employer-employee relationship; business-customer relationship; jailer-prisoner relationship; hospital-patient relationship; and, school-pupil relationship. Id. at 1145-46.

There is no "special relationship between a prisoner and an independent contractor to the BOP who performs audits under the PREA.  Nor could there be since, as discussed below, an independent contractor like NAKAMOTO, has no control over the prison facilities, the prison employees, prison doctors, or the prisoners.

### 3.      The "Control" Exception – No Such Control Here

"Absent a special relationship between a defendant and a plaintiff, a duty to protect a plaintiff from 'the conduct of a third party may [also] arise if the defendant is in **actual or**

**constructive control** of: (1) the instrumentality of the harm; (2) the premises upon which the tort is committed; or (3) the person who committed the tort.'"   Knight v. Merhige, 133 So.3d 1140, 1146 (Fla. 4th DCA 2014) (citations omitted), review dismissed 143 So.3d 919 (Fla. 2014).

Here, as an independent contractor contracted solely to audit certain prisons pursuant to the PREA, NAKAMOTO had no control – and no such control is alleged in the Complaint – to change or implement anything pursuant to its audits/reports; NAKAMOTO had no control over the physical prison facilities; NAKAMOTO had no control over the prison employees such that NAKAMOTO could order or direct the prison guards in any manner; NAKAMOTO had no control over the prisoners who were in the custody and control of the BOP; and, NAKAMOTO had no control over CO-DEFENDANT ROLSTON.

Accordingly, PLAINTIFFS have not and cannot plead a negligence claim under the "control" theory either.[8]

## V. **CONCLUSION**

For the numerous reasons set forth above, NAKAMOTO asserts that PLAINTIFFS' Complaint must be dismissed with prejudice as a matter of law.

WHEREFORE, DEFENDANT THE NAKAMOTO GROUP INC. requests the dismissal of the Complaint with prejudice.

---

[8]   As discussed in Knight v. Merhige, 133 So.3d 1140, 1147-49 (Fla. 4th DCA 2014), there are other ways to establish a duty for the conduct of a third party, but here PLAINTIFFS are clearly not alleging such other ways.   Thus, NAKAMOTO will not discuss or analyze these other theories.

**Dated: October 18, 2021**                          Respectfully submitted,

                                                     /s/ Douglas A. Kahle
                                                     Douglas A. Kahle, Esq.
                                                     Florida Bar No.: 0141194
                                                     E-Mail: dkahle@schwedpa.com
                                                     SCHWED KAHLE & KRESS, P.A.
                                                     11410 North Jog Road, Suite 100
                                                     Palm Beach Gardens, FL 33418
                                                     Telephone: (561) 694-0070
                                                     Facsimile: (561) 694-0057
                                                     *Attorneys for NAKAMOTO GROUP, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on **October 18, 2021**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                     /s/ Douglas A. Kahle
                                                     Douglas A. Kahle, Esq.
                                                     Florida Bar No.: 0141194
                                                     E-Mail: dkahle@schwedpa.com

## SERVICE LIST

| | |
|---|---|
| James V. Cook, Esq.<br>Law Office of James Cook<br>314 West Jefferson Street<br>Tallahassee, FL 32301<br>Phone: (850) 222-8080 Fax: (850) 561-0836<br>cookjv@gmail.com<br><br>***Counsel for Plaintiffs*** | Jay T. McCamic, Esq.<br>McCamic Law Firm, PLLC<br>80 12th Street, Ste. 305<br>Wheeling, WV 26003<br>Phone: 304-238-9460 Fax: 304-830-5324<br>jay@mccamic.com<br><br>***Counsel for Plaintiffs*** |
| Richard E. Johnson, Esq.<br>Law Office of Richard E. Johnson<br>314 West Jefferson Street<br>Tallahassee, Florida 32301<br>Phone: (850) 425-1997 Fax: (850) 561-0836<br>rick@rej-law.com<br><br><br><br>***Counsel for Plaintiffs*** | L. Dante diTrapano, Esq.<br>Benjamin Adams, Esq.<br>Alex McLaughlin, Esq.<br>Calwell Luce diTrapano, PLLC<br>500 Randolph Street<br>Charleston, WV 25302<br>Phone: 304-343-4323 Fax: 304-344-3684<br>dditrapano@cldlaw.com<br>badams@cldlaw.com<br>amclaughlin@ddlaw.com<br><br>***Counsel for Plaintiffs*** |
| Anthony I. Werner, Esq.<br>John & Werner Law Offices, PLLC<br>Board of Trade Building, Ste. 200<br>80 - 12th Street<br>Wheeling, WV 26003<br>Phone: : 304-233-4380 Fax: 304-233-4387<br>awerner@johnwernerlaw.com<br><br>***Counsel for Plaintiffs*** | |

Via CM/ECF