UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CONNIE BATCHELOR, et al.,

    Plaintiffs,

v.

PAUL ROLSTON, individually, and the NAKAMOTO GROUP, INC.,

    Defendants.

Case No. 4:21-cv-232-AW-MAF

**PLAINTIFF'S RESPONSE TO THE
COURT'S ORDER ON JURISDICTION**

Plaintiffs, CONNIE BATCHELOR, et al., respond to the Court's Order Regarding Jurisdiction (ECF 28), and would show as follows:

1. The Court has ordered supplemental briefing on jurisdiction as to whether the Court has jurisdiction and, if it has, whether the Court should exercise it.

2. **Common nucleus of operative fact**. The factors that the Rolston issues and the Nakamoto issues have in common are as follows:

    a. The audit was conducted between March 20-22, 2018. Rolston's sexual abuse was being investigated during that same time frame.

    b. Nakamoto failed to sufficiently interview medical staff to determine whether there were PREA complaints relating to medical care since there were such complaints and they focused on Paul Rolston.

    c. The auditors were supposed to tour the health care areas and speak to personnel but did not note that the exam room layout did not permit chaperones to see how intimate examinations were conducted.

    d. The auditors claimed wrongly that FCI Tallahassee "does not place alleged victims . . . in the SHU (Special Housing Unit aka Confinement).

1

> This indicates a failure to review records. Confinement was the first resort for inmates who complained of sexual abuse, although it robbed them of visits, phone calls, showers, jobs, classes, and early release.

e. The auditors claimed wrongly that there were only two cases of sexual abuse (inmate-on-inmate) and no open cases. In fact, there were three open cases relating to Rolston from 2016 that remained open through 2018 and on into 2019. Indicates a failure to review records.

f. In 2018, as a result of short-staffing, there was a backlog of 170 cases under investigation (not all sexual misconduct) sometimes resulting in two and three year delays in completing investigations.

g. In its brief history of FCI Tallahassee, Auditors fail to mention a notorious shoot-out over an attempt to arrest corrections officers in a contraband for sex ring in which a corrections officer and an FBI agent were killed in 2006 and several staff sexual abuse prosecutions since.

h. The audit wrongly claims that the facility's staffing plan takes into consideration generally accepted detention and correctional practices in calculating adequate staffing levels. (at p. 11). In fact, FCI Tallahassee was in a hiring freeze that resulted in recognized inadequate staffing. This factor of delay worked strongly in Rolston's favor.

i. Auditor claimed that "the facility does not place alleged victims or those considered high risk in the SHU" (Audit Report p. 5). However inmates who complained of sexual abuse were placed in the SHU during the audit period, which suggests a failure to review records.

j. The auditor also noted that policy require that staff consider other options before placing and inmate in the SHU. In fact, they must complete the BOP's Safeguarding of Inmates Alleging Sexual Abuse/Assault Allegation for which serves to document considerations of all options (Audit Report Section 115.68, p. 61). No such review is reflected.

k. Auditor fails to determine, as instructed by PREA Compliance Audit Instructions, if medical records are secured and who has access to them? In fact, Rolston kept inmate record open for hours entering self-serving comments to cover after being accused of sexual abuse.

l. Auditor fails to explicitly state protocol when an inmate reports sexual assault/abuse to medical staff and protocol for when said medical staff

2

       informs PREA of those reports. In this case, a nurse testified in deposition that she informed a medical supervisor of multiple complaints of inappropriate exams by Rolston but no record was made.

   m. The auditor reports that a victim advocate provides victims' support. Evidence on the ground indicates indifference or hostility.

   n. The auditor reports that an investigation is completed for all allegations of sexual abuse but in fact one allegation languished for three years, during which time evidence was lost.

   o. The auditor reports that an Evidence Recovery Team (ERT) is called to a scene to preserve evidence. In one case, the morning after a documented incident FCI Tallahassee staff had an inmate wiping down a desk where sexual activity had taken place with disinfectant.

   p. The auditor states that all employees are trained in mandatory reporting of sexual abuse, however in one case, a chaperone reported that half the Pap smears Rolston did were unnecessary – something she had never reported at the time that they happened.[1]

   q. It appears that for the most part, the auditor simply checked boxes on the word of FCI Tallahassee administrators.

3. **Exercise of the Court's supplemental jurisdiction**. Factors that favor the exercise of the Court's supplemental jurisdiction include:

   a. The same factors that enabled Rolston's sexual abuse of inmates illustrate many of the failures of Nakamoto's negligent audit process.

   b. Nakamoto claims that it was required to return all records to the United States so that diligent federal discovery will be required to recover them.

   c. Plaintiffs have found no special Florida standards for prison audits that would raise peculiar questions of Florida law in this case.

---

[1] Rolston was so well-known to FCI Tallahassee inmates that they had a recognized gesture at the mention of his name, consisting of the first two fingers thrusting out and a rotating thumb, which signified Rolston's penchant for rubbing the clitoris while probing the vagina during a pelvic examination. Rolston's most frequent chaperone said he would even perform a Pap smear on someone who had come in complaining of a headache.

## MEMORANDUM OF LAW

The burden of establishing that a claim falls within a court's jurisdiction "rests upon the party asserting jurisdiction." *Smith v. United States*, 14 F.4th 1228, 1230 (11th Cir. 2021), *citing Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Here, Plaintiffs depend on federal question jurisdiction along with supplemental jurisdiction under 28 U.S.C. 1367. Supplemental jurisdiction applies to claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." § 1367(a). A district court may decline such jurisdiction when a claim raises a novel or complex question of state law, when the supplemental claim predominates over the claim that provides original jurisdiction, where the district court has dismissed the claims on which it has original jurisdiction, or in exceptional circumstances where there are other compelling reasons for declining jurisdiction. Id. at § 1367(c).

### A. Plaintiffs Submit That the Negligent Performance of the PREA Audit by Nakamoto Was the Predicate for Paul Rolston's Abusive Actions

The Plaintiffs in this case are just a fraction of the women who were sexually abused by Defendant Rolston. Some have settled their cases with the United States. One lost at trial. However, the common factor was that PREA guidelines were simply not in place. The PREA program existed in name only. FCI Tallahassee has a sordid history of sexual exploitation of inmates by prison staff.

4

Women with histories of sexual abuse on the street are especially vulnerable to sexual exploitation within the prison walls. Most of the sexual exploitation is committed by corrections officers – especially among the housing officers who share close quarters with women where they live and sleep. Several corrections officers at FCI Tallahassee have been convicted of sexual abuse over the last decade. In 2006, a ring of corrections officers who were trading contraband for sex were about to be arrested by FBI agents when one of them pulled a gun and in the resulting shoot-out, the corrections officer and one FBI Agent were killed. But medical providers have also been convicted of sexual abuse.

     The Nakamoto Audit was clearly done without any hands-on investigation. For instance, the auditor claims that there were no open investigations involving staff at the time of the audit when, in fact, there were at least three open sexual abuse investigations involving Paul Rolston alone. The auditor claimed that the SHU (Special Housing Unit aka Confinement) was not used as a first resort for women who complained of sexual abuse. In fact a comparison of the rolls of women locked up in the SHU with women complaining of sexual abuse would make clear that confinement was the first resort – the second being the transfer of women to remote prisons far from friends and family. Confinement in the SHU could mean loss of a school program, a prison job, or even a special program that could lead to early release in completed successfully.

The Nakamoto auditor claimed that there was a protocol for reporting inmate claims of sexual abuse. But when a nurse received multiple complaints by prisoners of inappropriate intimate examinations by Paul Rolston, she reported the allegations to the Assistant Medical Director, Harold White, who, as she later testified in deposition, apparently did nothing. White denied receiving any such information and nothing was documented. The auditor reported that staff was aware of the reporting duty and yet only in the course of an investigation did a chaperone report that half of the Pap smears that Rolston did were unnecessary in that he would want to do a Pap smear even if the inmate was only complaining of a headache. Although the standard for the institution, absent abnormality, was 3-5 years depending on the inmate's age, Rolston would do them months apart.

Although there were other sexual abuses taking place in other parts of the prison that took advantage of the negligent and haphazard performance of the Nakamoto audit, few of them were as clearly on point, issue after issue, as the Rolston episodes in the medical department. Plaintiffs submit that the confluence of their facts, occurrences, witnesses, and evidence have more in common with *Malphurs v. Cooling Towers Sys. Inc.*, 709 Fed. Appx. 935 (11th Cir. 2017) than *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451 (11th Cir. 1996).

### B. Plaintiffs Would Seek to Further Amend the Amended Complaint to More Clearly Allege a Common Nucleus of Operative Fact

Taking note that a determination of whether claims arise from the same facts or similar occurrences, witnesses or evidence is ordinarily based on the pleadings, *Lucero v. Trosch*, 121 F.3d 591, 598 (11th Cir. 1997), Plaintiffs will seek to further amend to reflect the factors above. Plaintiffs believe that a further amendment of the Amended Complaint would make clear that common factors unite the supplemental claims with the claims of original jurisdiction. Issue-by-issue, the defects in the Nakamoto Audit match the defects in the FCI Tallahassee PREA program on which Rolston relied to get away with a long history of sexual abuse.

WHEREFORE, Plaintiff submits that the Court has jurisdiction over all the counts raised and should exercise that jurisdiction in this case. Plaintiff will plan to separately move to further amend the Amended Complaint.

Respectfully Submitted,   s/James V. Cook
JAMES V. COOK, ESQ., FBN 966843
Attorney for Plaintiffs
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com

I CERTIFY the pertinent parts of this Memorandum do not exceed 1728 words

I CERTIFY the foregoing was filed electronically on 2/8/2022, serving counsel of record registered to be notified by the CM/ECF electronic filing system.

/s/James V. Cook