IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CONNIE BATCHELOR, et al.,

    Plaintiffs,

v.                                                  Case No. 4:21-cv-232-AW-MAF

PAUL ROLSTON and NAKAMOTO
GROUP, INC.,

    Defendants.

_____/

## ORDER GRANTING IN PART MOTION TO DISMISS

Plaintiffs are prisoners who allege that Defendant Paul Rolston—a prison medical professional—sexually abused them under the guise of conducting medical exams. They sued both Rolston and Nakamoto Group, Inc. They have Eighth Amendment and sexual battery claims against Rolston, and they contend Nakamoto is liable under Florida law (for negligence and third-party breach of contract) because its audit was inadequate to protect them from the abuse. *See generally* ECF No. 19 (FAC).

Nakamoto moves to dismiss for failure to state a claim (ECF No. 21). Having carefully considered the parties' arguments, I grant Nakamoto's motion as to the third-party contract claim but deny it as to the negligence claim.

## I.     BACKGROUND

The facts come from the complaint, and at the motion-to-dismiss stage, I accept as true all well-pleaded factual allegations. *See Ashcroft v. Iqbal*, 556 U.S.

1

662, 678 (2009). Under a federal contract, Nakamoto audited federal correctional facilities for compliance with the Prison Rape Elimination Act (PREA), 34 U.S.C. §§ 30301-09, a law designed to protect inmates from sexual abuse. FAC ¶ 10; *see also* ECF No. 19-1 at 20, 26. When Nakamoto audited the Federal Correctional Institute Tallahassee (FCIT), which housed Plaintiffs, it did not interview prisoners or prison staff who knew about Rolston's misconduct. FAC ¶ 138. Nor did it review records that would have revealed details of Rolston's misconduct. As a result, Plaintiffs contend, Rolston's abuse continued longer than it would have with a more thorough investigation. *Id.* ¶¶ 141-42.

## II. ANALYSIS

I first address the issue of supplemental jurisdiction over Plaintiffs' state-law claims. Concluding the court can and should exercise jurisdiction, I then turn to the merits.

### A.

Federal courts must examine their own subject-matter jurisdiction before reaching the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). Plaintiffs' claims against Nakamoto are state-law claims,[1] and Plaintiffs

---

[1] Nakamoto argues that I should reframe Plaintiffs' claims under federal law. ECF No. 21 at 4, 8; *see also* ECF No. 30 at 2 n.1. To the extent this argument relates to jurisdiction, Nakamoto has shown no reason to diverge from the normal practice of analyzing "the terms of the complaint as the plaintiff[s] choose[] to frame it."

invoke supplemental jurisdiction under 28 U.S.C. § 1367(a). I sought (and the parties provided) supplemental briefing on the issue of whether § 1367 provided jurisdiction and, if so, whether the court should exercise that jurisdiction. *See* ECF Nos. 28-30. Having considered the parties' positions, I conclude that Plaintiffs' claims against Nakamoto arise from the same transaction or occurrence as their claims against Rolston. Thus, § 1367 provides jurisdiction. 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

Under § 1367(c)(1), though, the court "may decline to exercise supplemental jurisdiction" if a "claim raises a novel or complex issue of State law." Nakamoto contends I should apply this provision, arguing that because Florida courts have not evaluated the tort duty that a prison auditor may owe inmates, the court has no "realistic option other than to decline to exercise supplemental jurisdiction." ECF No. 30 at 5. Although its argument has some force, I conclude that the issues here do not meet § 1367(c)(1)'s standard of novelty and complexity.

"Generally, state tort claims are not considered novel or complex." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006). And Nakamoto

---

*Kemp v. Int'l Bus. Machs. Corp.*, 109 F.3d 708, 712 (11th Cir. 1997). To the extent it is a substantive argument relating to a preemption defense, I address it below.

3

does not "cite to any authority holding the state law claims in this case . . . are considered novel or complex by a federal court." *Id.* at 744. Although this *specific* scenario is "novel" in that no Florida case exactly matches it, I find that general principles of Florida common law answer all the relevant legal questions here. Thus, I will not dismiss under § 1367(c)(1), and I turn now to the merits.

**B.**

To survive a 12(b)(6) motion, Plaintiffs must "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although Plaintiffs are entitled to a "reasonable inference" in their favor, the complaint must contain "sufficient factual matter" to justify that inference—"more than a sheer possibility that a defendant has acted unlawfully." *Id.* Nakamoto offers several reasons why Plaintiffs have not done this. I address each in turn.

**1.**

Nakamoto first says Plaintiffs' common-law claims are "PREA claims in disguise" and subject to dismissal because there is no PREA private right of action. ECF No. 21 at 2. This is essentially an argument that the PREA preempts state law and displaces Plaintiffs' otherwise cognizable common-law claims. *See* ECF No. 21 at 7. Plaintiffs acknowledge that there is no PREA private action. ECF No. 24 at 6, *see also Abshire III v. Corr. Corp. of Am.*, 2015 WL 10579295, at *4 (W.D. La. Dec.

21, 2015) (holding that PREA "does not give prisoners any specific rights" and cannot form the basis for a suit against prisons or prison staff); *but cf. Cox v. Nobles*, 15 F.4th 1350, 1361 (11th Cir. 2021) (declining to decide "whether the PREA offers a standalone cause of action"). But they say they are not suing under the PREA. Instead they rely on Nakamoto's contractual obligations, which they claim constitute an independent source for civil liability. At least at this stage, Nakamoto has not shown that the PREA precludes Plaintiffs' claims.[2]

Relatedly, because Plaintiffs assert state-law claims, they did not need to exhaust administrative remedies. *See* 42 U.S.C. § 1997e(a) (imposing exhaustion requirement for prisoner lawsuits under § 1983 "or any other Federal law").

## 2.

Nakamoto next argues that Plaintiffs have no contract action because they are not third-party beneficiaries of Nakamoto's government contract. ECF No. 21 at 9. The parties debate whether federal common law or Florida law applies to the contract

---

[2] Nakamoto cites several cases to support its position that the court should look behind the complaint and recast plaintiffs' claims. *See* ECF No. 30 at 2 n.1 (citing *Arrington v. Cenlar Fed. Savs. Bank*, 2020 WL 5258466, at *4 (E.D. Mich. Sept. 2, 2020) ("It is well-settled that the failure to meet HUD guidelines cannot be used as the basis for a breach of contract claim."). But the Eleventh Circuit has rejected that approach where State law otherwise permits a claim. *See Bates v. JPMorgan Chase Bank*, 768 F.3d 1126, 1130-32 (11th Cir. 2014) (rejecting district court's ruling that HUD regulations preclude claims "for breach of contract based on the regulations when a direct suit for violations of the regulations is not permitted").

issues, but they agree the outcome would be the same under either. ECF No. 21 at 8-9; ECF No. 24 at 7-8.

"A party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong." *Dingle v. Dellinger*, 134 So. 3d 484, 488 (Fla. 5th DCA 2014). To survive the motion to dismiss, then, Plaintiffs had to allege facts that show, among other things, the contracting parties intended to "primarily and directly" benefit them. They have not done that. (They allege such an intent, FAC ¶ 153, but that conclusory allegation is not entitled to the presumption of truth, *see Iqbal*, 556 U.S. at 681.) They correctly explain that the *PREA* is intended to protect federal prisoners, FAC ¶¶ 150-52, a "class of persons to which" Plaintiffs belong. *Dellinger*, 134 So. 2d at 488. But that the PREA was intended to protect them does not mean Nakamoto's contract was. The "contract itself expresses" nothing about benefits to prisoners, which militates against third-party enforcement. *See id.* Also, to succeed on a third-party contract claim, "it must be shown that both contracting parties intended to benefit the third party; it is insufficient to show that only one party unilaterally intended to benefit the third party." *Hunt Ridge at Tall Pines, Inc. v. Hall*, 766 So. 2d 399, 400 (Fla. 2d DCA 2000). Supposing the government intended the audit contract to benefit Plaintiffs (although more likely the government's purpose in contracting was to

comply with federal law requiring audits), that is still not enough. Plaintiffs had to allege that Nakamoto also intended to benefit them. *See id.* Absent facts indicating such a bilateral intent, Plaintiffs have not stated a third-party contract claim.

**2.**

As to the negligence claims, Nakamoto contends that (i) a contract cannot be the basis for a negligence claim and (ii) Nakamoto owed no duty to protect Plaintiffs from Rolston's misconduct. ECF No. 21 at 12, 17. For their part, Plaintiffs acknowledge that Nakamoto has no general duty to protect prisoners. They argue instead that once Nakamoto contracted to inspect the prison, it had a duty to do so competently and can be liable to those injured when it didn't. ECF No. 24 at 10.

To the extent Nakamoto is arguing that there can never be a negligence claim where Plaintiffs have an available contract action, that would not help because Plaintiffs have no available contract action. At any rate, much of Nakamoto's argument seems to rest on the "economic loss rule," which precludes a "tort action . . . where a defendant has not committed a breach of duty apart from a breach of contract." *Tiara Condo. Ass'n, v. March & McLennan Cos.*, 110 So. 3d 399, 402 (Fla. 2013); *see also, e.g.*, ECF No. 21 at 16-17 (quoting *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1340 (S.D. Fla. 2011) ("Here, the parties' relationship was contractual, which precludes a claim for negligence under the contract.")). But Plaintiffs are not suing based on the contract, so the economic loss

rule has no application. Regardless, the Supreme Court of Florida receded from most applications of that doctrine in *Tiara Condo.*, and the economic loss rule now only applies in products liability cases. 110 So. 3d at 407. Plus, Plaintiffs seek redress for personal injury, not economic harm.

That leaves Nakamoto's argument that it owes Plaintiffs no duty of care. Under Florida law, a contractor's "liability extends to persons foreseeably injured by his failure to use reasonable care in performance of a contractual promise." *Md. Maint. Serv., Inc. v. Palmieri*, 559 So. 2d 74, 76 (Fla. 3d DCA 1990) (allowing negligence claim against contractor that allegedly failed to make premises safe for guests under maintenance contract). Conceptually, "the duty sued on in a negligence action is not the contractual promise but the duty to use reasonable care in affirmatively performing that promise. The duty exists independent of the contract." *Rollins, Inc. v. Heller*, 454 So. 2d 580, 583 n.1 (Fla. 3d DCA 1984) (quoting *Navajo Circle, Inc. v. Dev. Concepts Corp.*, 373 So. 2d 689, 691 (Fla. 2d DCA 1979)).

Nakamoto had a duty toward the Plaintiffs because—accepting Plaintiffs' factual allegations as true—their injuries were the reasonably foreseeable consequence of Nakamoto's negligently performed PREA audit. The contract under which Nakamoto performed created a duty of reasonable care to those a proper audit is supposed to protect. In this way, the case is like *Palmieri*. There, a horse-racing facility contracted with the defendant to clean and maintain the premises. 559 So. 2d

at 74-75. A spectator slipped and fell because the area was littered with trash. *Id.* at 75. The court found that the maintenance contract created a duty of reasonable care to spectators who were foreseeable victims of unsanitary conditions. *Id.* at 76.

Here, Nakamoto contracted to audit FCIT and monitor whether its practices were adequate to protect inmates, including Plaintiffs, from sexual assault. FAC ¶ 10. This includes sexual misconduct by prison medical staff. *See* 34 U.S.C. § 30309(12)(c) (excluding prison healthcare-provider "body cavity searches" from the PREA definition of "rape," "*provided that* the search is conducted in a manner consistent with constitutional requirements" (emphasis added)). Indeed, as Plaintiffs note, "the foreseeability of [sexual] crimes was the reason . . . Nakamoto was hired to do an audit." ECF No. 24 at 13; *see also* FAC ¶ 135 (alleging publicly available information about "longstanding and ongoing sexual misconduct" at FCIT). And the audit contract required Nakamoto to "develop a corrective action plan" with FCIT to remediate any failures to meet PREA standards. ECF No. 19-1 at 30. Under these circumstances, Nakamoto's alleged failure to audit FCIT properly could foreseeably lead to Plaintiffs' alleged injuries. That is a sufficient "minimal threshold . . . for opening the courthouse doors" to a negligence claim. *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992).

Finally, Nakamoto argues that, even if it owed Plaintiffs a duty, it cannot be liable for intervening criminal acts like Rolston's. ECF No. 21 at 17-19. But this is

not a separate argument: Nakamoto relies on the general rule that no duty exists to prevent the criminal acts of third parties. *Id.* at 17. Here, for the reasons above, Nakamoto did have a duty. The negligence claim will not be dismissed.

## CONCLUSION

Nakamoto's motion to dismiss (ECF No. 21) is GRANTED as to Plaintiffs' third-party contract claim (Count IV) and DENIED as to the negligence claim (Count III). Nakamoto must answer the amended complaint as to the remaining claim within 14 days.

SO ORDERED on June 2, 2022.

                                          s/ *Allen Winsor*
                                          United States District Judge